**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHECKPOINT SYSTEMS, INC. | ) | |
| 2005 Market Street | ) | |
| Philadelphia, PA 69103 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HANGZHOU CENTURY CO., LTD d/b/a | ) | Case No. _____ |
| CENTURY PLASTIC & ELECTRONIC | ) | |
| CO., LTD. | ) | Judge _____ |
| 1418 Moganshan Road | ) | |
| Hangzhou Zhejiang 310011 | ) | COMPLAINT FOR INJUNCTIVE |
| People's Republic of China | ) | RELIEF AND MONEY DAMAGES |
| | ) | |
| and | ) | (DEMAND FOR JURY TRIAL) |
| | ) | |
| UNIVERSAL SURVEILLANCE | ) | |
| CORPORATION d/b/a UNIVERSAL | ) | |
| SURVEILLANCE SYSTEMS | ) | |
| c/o Adel Odeh Sayegh | ) | |
| 11172 Elm Avenue | ) | |
| Rancho Cucamonga, CA 91730 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Checkpoint Systems, Inc. ("Checkpoint") brings this complaint against

defendants Hangzhou Century Co., Ltd. d/b/a Century Plastic & Electronic Co., Ltd. ("Century")

and Universal Surveillance Corporation d/b/a Universal Surveillance Systems ("USS") for patent

infringement, breach of contract, and copyright infringement. For its Complaint, Checkpoint states the following:

## NATURE OF THE CASE

1.      Checkpoint is a leading producer and supplier of products that help retailers and manufacturers reduce product theft, enhance shelf-availability for customers, and improve supply-chain efficiencies. Checkpoint's products are based on many years of technology expertise and market-leading applications. Checkpoint designs, manufacturers, and sells high-tech anti-theft products and solutions, providing products to the top retailers in the United States in addition to thousands of other retailers in the United States and around the world.

2.      In contrast to Checkpoint, Century and USS are relatively recent entrants in the loss prevention industry. Century is primarily an original equipment manufacturer ("OEM") that makes or assembles retail anti-theft devices for Checkpoint and other companies, often using the designs, specifications, concepts, or molds that are supplied to it by others. The products that Century manufactures are usually sold under its customers' labels and brand names. USS is a distributor of retail loss prevention goods and services. Upon information and belief, USS is the largest distributor of Century products in North America.

3.      Century and USS are waging a coordinated attack on Checkpoint's intellectual property, contract rights, and market leading innovations. Specifically, Century and USS are making, using, selling, offering for sale, and/or importing in the United States retail anti-theft devices that infringe at least seven of Checkpoint's published United States patents. Century is also breaching its contractual obligations to Checkpoint by selling knock-off versions of Checkpoint's products, misusing Checkpoint's confidential information, and making unauthorized disclosures regarding Checkpoint and its products. Additionally, USS blatantly copied a product manual that Checkpoint specifically designed for Home Depot in violation of

Checkpoint's copyright.

## PARTIES

4.     Checkpoint is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its corporate headquarters in Philadelphia, Pennsylvania.  Checkpoint and its Alpha Products division ("Alpha") have an office and manufacturing facility in Canton, Ohio.

5.     Century is a corporation organized under the laws of the People's Republic of China and located in Hangzhou, China.

6.     Century became a Checkpoint OEM in 2006, making electronic article surveillance ("EAS") hard tags for sale to Checkpoint's customers around the world.

7.     Century also makes anti-theft products that are sold and distributed in the United States by USS.

8.     USS is a corporation organized under the laws of the State of California, with its principal place of business in Rancho Cucamonga, California.

9.     USS sells EAS and other theft prevention goods and services.

10.     Upon information and belief, the majority of the products sold by USS are built by Century.

## JURISDICTION AND VENUE

11.     This action alleges patent infringement arising under the patent laws of the United States (Title 35 of the United States Code) and copyright infringement arising under the copyright laws of the United States (Title 17 of the United States Code).  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338, and under the doctrine of pendant jurisdiction.

12.     Century and USS transact business in, and have other contacts with, the State of Ohio and this District, and are therefore subject to personal jurisdiction in this District.  Century

and USS have committed acts of infringement in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391 and 28 U.S.C §1400.

## FACTUAL BACKGROUND

**Checkpoint's Market Leading Innovation**

14.     Founded in 1967, Checkpoint is the leading multinational manufacturer of technology-driven integrated solutions and security systems that protect people and assets around the world.

15.     For more than 40 years, Checkpoint has been the recognized pioneer and leading innovator in the retail anti-theft industry.  Among other things, Checkpoint's products are used by retailers to protect a wide variety of consumer goods, including apparel, electronics, video games, DVDs, personal items, home and kitchen accessories, wine and spirits, and sports equipment.

16.     Checkpoint's products are used by some of the most successful and recognizable retailers in the world, including Sears, Wal-Mart, Target, CVS, Toys R' Us, Macy's, Rite Aid, Best Buy, Gap, Home Depot, Lowe's, Staples, Kohl's, Carrefour, and BJ's Wholesale Club.

17.     Checkpoint invests substantial resources in product development.  It has designed and developed unique products that are generally available for retailers and manufacturers, and custom products designed to meet individual customer needs.

**The Century-Checkpoint Purchase Agreement**

18.     Pursuant to the terms of a March 15, 2006 Purchase Agreement between Checkpoint and Century (the "Purchase Agreement"), Checkpoint and Century entered into an OEM relationship in which Century agreed to build EAS hard tags for Checkpoint.  A true and correct copy of the Purchase Agreement is attached hereto at Exhibit A.

19.     Because of the Purchase Agreement, Checkpoint relied upon Century and viewed

Century as an important business partner.

20.     Correspondingly, Century repeatedly assured Checkpoint that it highly valued Checkpoint and the parties' OEM relationship.

21.     To facilitate the manufacture of Checkpoint's products under the Purchase Agreement, Checkpoint provided Century the concepts, designs, specifications, test equipment, molds, tooling, customer requirements, and other confidential information and technology which are necessary to build Checkpoint's products.

22.     In return, Checkpoint insisted upon and received agreement from Century that it would not misuse or disclose the information and materials supplied to it by Checkpoint in connection with the Purchase Agreement.

23.     Specifically, Century agreed to use Checkpoint's confidential product information and materials exclusively for the manufacture of products for Checkpoint.  (Purchase Agreement §§10.0, 11.1, 19.0.)

24.     Century also promised not to disclose any of Checkpoint's confidential information without Checkpoint's prior consent.  (Purchase Agreement §19.0.)

25.     The parties agreed that Checkpoint is the sole owner of all intellectual property provided to Century in connection with the Purchase Agreement.  (Purchase Agreement §18.3.)

26.     The Purchase Agreement also provides that Checkpoint owns all products built for Checkpoint by Century.  (Purchase Agreement §12.1.)

27.     Century assumed certain noncompetition obligations under the Purchase Agreement.  Specifically, Section 11.1 of the Purchase Agreement provides:

11.0    EXCLUSIVITY AND NON-COMPETE

11.1    Supplier agrees not to sell CKP products or
products made with CKP designs and/or
specifications to any other party.  Furthermore,

> Supplier agrees not to compete with CKP by selling similar, competitive products incorporating some or all of CKP's design specifications to other parties, including any other manufacturers or EAS or RFID equipment.  Supplier also agrees not to sell similar, competitive products to CKP's direct customers.

(Purchase Agreement §§11.0 and 11.1.)

28.     Century further agreed not to disclose its OEM status, the products it manufactured for Checkpoint, or any of the terms and conditions of the parties' agreement without Checkpoint's express written consent.  (Purchase Agreement §20.7.)

**Checkpoint's Innovative Hard Tag@Source Program**

29.     Among the market-leading solutions that Checkpoint designs, manufactures, and sells is its Hard Tag@Source ("HT@S") product and associated program.

30.     The HT@S program provides retailers and their suppliers with the benefits of a strong visual theft deterrent in the form of an EAS hard tag that is applied to apparel during the manufacturing process.  The HT@S program eliminates the high cost of in-store tagging by store employees and delivers manufactured products that are fully secured and ready to be placed on store shelves for customer purchase.  HT@S hard tags are recycled after each use, thereby providing additional benefits and cost savings.

31.     Checkpoint first developed the HT@S concept in 2007 to meet the needs of one of its customers and specially designed a new hard tag, known as the "Gen1 Hard Tag," to meet the customer's durability, performance, design, and style requirements.

32.     As Checkpoint's OEM, Century built the Gen1 Hard Tag for Checkpoint pursuant to the Purchase Agreement.  To do so, Century used Checkpoint's designs, specifications, form factors, molds, customer requirements, technology and other confidential information.

33.     Due to the success of the Gen1 Hard Tag and to meet demands from other

customers, Checkpoint subsequently expanded the HT@S program and developed a second generation HT@S hard tag, known as the "Gen2 Hard Tag."

34.     Century worked with Checkpoint to build the Gen2 Hard Tag as Checkpoint's OEM, once again using Checkpoint's designs, specifications, concepts, form factors, molds, customer requirements, technology, and other confidential information.

35.     Checkpoint owns all rights to the Gen1 and Gen2 Hard Tags, as well as all related intellectual property.  (Purchase Agreement §§12.1, 18.3.)

**The Checkpoint Patents**

36.     Due to its substantial investment in its intellectual property and product innovation, Checkpoint has taken steps to protect it patent rights.  Checkpoint is the owner of numerous United States and foreign patents.

37.     On August 7, 2007, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,251,966 (the "'966 patent") for a "cable wrap security device."  A true and correct copy of the '966 patent is attached hereto at Exhibit B.

38.     Checkpoint is the owner, by assignment, of the '966 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '966 patent.

39.     On January 6, 2009, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,474,209 (the "'209 patent") for a "cable alarm security device."  A true and correct copy of the '209 patent is attached hereto at Exhibit C.

40.     Checkpoint is the owner, by assignment, of the '209 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '209 patent.

41.     On January 6, 2009, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,474,215 (the "'215 patent") for "alarm systems, remote communication devices, and article security methods."  A true and correct copy of the '215 patent is attached hereto at Exhibit D.

42.     Checkpoint is the owner, by assignment, of the '215 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '215 patent.

43.     On January 27, 2009, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,481,086 (the "'086 patent") for a "cable wrap security device."  A true and correct copy of the '086 patent is attached hereto at Exhibit E.

44.     Checkpoint is the owner, by assignment, of the '086 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '086 patent.

45.      On May 26, 2009, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,538,680 (the "'680 patent") for "alarm systems, wireless alarm devices, and article security methods."  A true and correct copy of the '680 patent is attached hereto at Exhibit F.

46.     Checkpoint is the owner, by assignment, of the '680 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '680 patent.

47.     On February 16, 2010, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,663,489 (the "'489 patent") for "alarm systems, wireless alarm devices, and article security methods."  A true and correct copy of the '489 patent is

attached hereto at Exhibit G.

48.     Checkpoint is the owner, by assignment, of the '489 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '489 patent.

49.     On January 4, 2011, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,864,049 (the "'049 patent") for "alarm systems, remote communication devices, and article security methods."  A true and correct copy of the '049 patent is attached hereto at Exhibit H.

50.     Checkpoint is the owner, by assignment, of the '049 patent.  Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '049 patent.

**Century And USS Infringe Checkpoint's Patents**

51.     Despite its OEM relationship with Checkpoint and its promise to honor Checkpoint's intellectual property rights, Century infringed one or more claims of at least seven of Checkpoint's published United Stated patents.  USS, Century's largest distributor, has joined in this infringement.

52.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T136 mini security wrap, the Century T149 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

53.      USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling,

offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

54.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '209 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T121 cable lock.

55.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 security wrap, the Century T136 mini security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

56.      USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

57.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '215 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

58.      USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '215 patent by making, selling,

offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

59.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '680 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

60.     USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '680 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

61.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '489 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

62.     USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '489 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-

11

alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot

Lanyard Tag.

63.     Century has infringed, directly and/or through acts of contributory infringement

or inducement, and continues to infringe one or more claims of the '049 patent by making,

selling, offering for sale, and/or importing into the United States anti-theft devices, including the

Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the

USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming

Patriot Lanyard Tag.

64.      USS has infringed, directly and/or through acts of contributory infringement or

inducement, and continues to infringe one or more claims of the '049 patent by making, selling,

offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-

alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot

Lanyard Tag.

65.     On February 5, 2010, February 8, 2010 and June 1, 2010, Checkpoint advised

Century of its belief that Century was infringing one or more claims of the '209 and '086 patents.

66.     In response, Century stated that it valued its relationship with Checkpoint,

respected Checkpoint's intellectual property rights, and was not infringing Checkpoint's patents.

67.     Since that time, Checkpoint has discovered acts of infringement by Century and

USS.

68.     Upon information and belief, Century and USS have imported the accused

devices into the United States and sold or offered to sell such devices to Toys R' Us, Macy's,

The Sport's Authority, and Kohl's, among other U.S. retailers.

69.     Checkpoint has been irreparably damaged by the infringing acts of Century and

USS, and Checkpoint will continue to be irreparably damaged unless Century and USS are enjoined from further acts of infringement.

70.     Checkpoint is entitled to recover damages adequate to compensate it for the acts of infringement by Century and USS.

71.     Upon information and belief, the acts of infringement by Century and USS have been intentional and willful.

**Century's Violates The Purchase Agreement**

72.     Century's misconduct is not limited to infringement of Checkpoint's patents. Century has also committed multiple, intentional and material breaches of the Purchase Agreement.

73.     Upon information and belief, Century is making and selling EAS source tags (the "Century Knock-Offs") that are similar to, and compete with, Checkpoint's Gen1 and Gen2 Hard Tags.

74.     Century previously made the Gen1 and Gen2 Hard Tags for Checkpoint and is now making the Century Knock-Offs for itself.

75.     Upon information and belief, the Century Knock-Offs are based on Checkpoint's concepts and made with some or all of Checkpoint's designs, specifications, requirements, and/or other confidential information.

76.     Upon information and belief, Century has offered for sale, sold, and/or is selling the Century Knock-Offs to Checkpoint's direct customers.

77.     Upon information and belief, Century also offered for sale, sold, and/or is selling the Century Knock-Offs to other retailers and suppliers.

78.     Century's manufacture and sale of the Century Knock-Offs constitutes a breach of

Sections 11.1, 12.1, 18.3 and 19.0 of the Purchase Agreement.

79.     Century also made public disclosures regarding its OEM work for Checkpoint under the Purchase Agreement without prior authorization from Checkpoint.

80.     Among other instances, Century made such unauthorized disclosures in a Prospectus it issued in connection with its 2010 initial public offering on the Shenzen (China) Stock Exchange.

81.      Upon information and belief, Century also made improper and unauthorized disclosures about the Purchase Agreement and the products it manufactured for Checkpoint to Checkpoint's actual and potential customers and to Checkpoint's competitors.

82.     Century's unauthorized disclosures constitute a breach of Sections 19.0 and 20.7 of the Purchase Agreement.

**USS's Infringes Checkpoint's Copyright**

83.     USS has also tried to take further unlawful advantage of Checkpoint's market innovations by blatantly copying a product manual that Checkpoint created specifically for Home Depot.

84.     As part of the customer service that has made Checkpoint the industry leader, it creates manuals and other training materials to instruct its customers how to use Checkpoint's various anti-theft goods and solutions.

85.     Checkpoint has made, and continues to make, a substantial investment of time, effort and expense in the design, development, testing, and publication of its product manuals and other training materials.

86.     In connection with its sale of Spider Wrap multi-alarming products to Home Depot, Checkpoint's Alpha Products division created a training manual for use by Home Depot

personnel (the "Alpha Home Depot Manual").  A true and correct copy of the Alpha Home

Depot Manual is attached hereto at Exhibit I.

      87.    The Alpha Home Depot Manual contains wholly original materials constituting

copyrightable subject matter under the Copyright Act.  The material was created by Checkpoint

personnel and is owned by Checkpoint.

      88.    USS created its own product manual for Home Depot to use with the USS

BoxGuard device (the "USS Home Depot Manual").  A true and correct copy of the USS Home

Depot Manual is attached hereto at Exhibit J.

      89.    The USS BoxGuard device is similar in form, function and design to

Checkpoint's Spider Wrap device.  The Checkpoint Spider Wrap and the USS BoxGuard devices

are intended to secure the same kinds of retail products and are marketed to the same customers.

      90.    As alleged above, the USS BoxGuard device infringes one or more of

Checkpoint's valid United States patents.

      91.    For its USS Home Depot Manual, USS copied the design, layout, and nearly all of

the substantive text from the Alpha Home Depot Manual without Checkpoint's consent or

authorization.  (*Compare* Ex. I with Ex. J.)

      92.    Any alterations of the USS Home Depot Manual by USS are insignificant.

      93.    Practically the only thing that USS bothered to change in its USS Home Depot

Manual was the title of the manual, the product name, and pictures of the USS BoxGuard device.

      94.    Prior to filing suit, Checkpoint filed a copyright registration application for the

Alpha Home Depot Manual. A true and correct copy of a receipt confirming Checkpoint's

registration application is attached hereto at Exhibit K.

      95.    USS's violation of Checkpoint's copyright is part of the ongoing and unlawful

campaign that USS and Century are waging against Checkpoint to take advantage of Checkpoint's innovation and usurp its customers and business.

**COUNT I**
**PATENT INFRINGEMENT**
**(Against Century)**

96.     Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 95 above, as if fully alleged herein.

97.     Century has infringed at least seven of Checkpoint's published United States Patents, namely the '966 patent, the '209 patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent.

98.     The '966 patent, the '209 patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent are presumed to be valid pursuant to 35 U.S.C §282.  These patents are, in fact, valid.

99.     Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T136 mini security wrap, the Century T149 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

100.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '209 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T121 cable lock.

101.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the

Century T-149 security wrap, the Century T-136 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

102.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '215 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

103.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '680 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

104.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '489 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

105.    Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '049 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the

Century T149 3-and 4-alarm security wraps, the Century T121 multi-alarming cable lock, the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

106.    Checkpoint has been irreparably damaged by Century's acts of infringement and will continue to be irreparably damaged unless Century is enjoined from further acts of infringement.

107.    Checkpoint is entitled to recover damages adequate to compensate it for Century's acts of infringement.

108.    Upon information and belief, Century's infringement has been intentional and willful.

109.    This case is an exceptional case within the meaning of 35 U.S.C. §285.

WHEREFORE, Checkpoints asks that the Court

A.    Enter judgment in favor of Checkpoint and against Century on Count I.

B.    Enter an injunction against Century prohibiting Century, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it from further infringement, inducement or contributory infringement of the '966 patent, the '209 patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent;

C.    Award damages adequate to compensate Checkpoint for the infringement that has occurred together with prejudgment interest from the date(s) infringement of the '966 patent, the '209 patent, the '086 began, the '215 patent, the '680 patent, the '489 patent, and the '049 patent began, and post-judgment interest;

D.    Find that this is an exceptional case pursuant to 35 U.S.C. §285, and accordingly award Checkpoint its reasonable attorneys' fees and costs;

E.    Award treble damages pursuant to 35 U.S.C. §284;

F.    Award all other damages permitted by 35 U.S.C. §284; and

G.    Award such other and further relief as justice may require.

**COUNT II**
**PATENT INFRINGEMENT**
**(Against USS)**

110.    Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 109 above, as if fully alleged herein.

111.    USS has infringed at least six of Checkpoint's published United States Patents, namely the '966 patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent.

112.    The '966 patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent are presumed to be valid pursuant to 35 U.S.C §282.  These patents are, in fact, valid.

113.    USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

114.    USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

115.     USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '215 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

116.     USS has infringed, directly and/or through acts of contributory infringement or

inducement, and continues to infringe one or more claims of the '680 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the USS multi-alarming Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

117.    USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '489 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

118.    USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '049 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS 3-alarm BoxGuard, the multi-alarming USS Patriot Pin Tag, and the USS multi-alarming Patriot Lanyard Tag.

119.    Checkpoint has been irreparably damaged by USS's acts of infringement and will continue to be irreparably damaged unless USS is enjoined from further acts of infringement.

120.    Checkpoint is entitled to recover damages adequate to compensate it for USS's acts of infringement.

121.    Upon information and belief, USS's infringement has been intentional and willful.

122.    This case is an exceptional case within the meaning of 35 U.S.C. §285.

WHEREFORE, Checkpoints asks that the Court

A.      Enter judgment in favor of Checkpoint and against USS on Count I.

B.      Enter an injunction against USS prohibiting USS, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it from further infringement, inducement or contributory infringement of the '966

patent, the '086 patent, the '215 patent, the '680 patent, the '489 patent, and the '049 patent;

C.  Award damages adequate to compensate Checkpoint for the infringement that has occurred together with prejudgment interest from the date(s) infringement of the '966 patent, the '086 patent, the '215 patent, the '680 patent, and '489 patent, and the '049 patent began, and post-judgment interest;

D.  Find that this is an exceptional case pursuant to 35 U.S.C. §285, and accordingly award Checkpoint its reasonable attorneys' fees and costs;

E.  Award treble damages pursuant to 35 U.S.C. §284;

F.  Award all other damages permitted by 35 U.S.C. §284; and

G.  Award such other and further relief as justice may require.

## COUNT III
## BREACH OF CONTRACT
### (Against Century)

123.    Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 122 above, as if fully alleged herein.

124.    The Purchase Agreement constitutes a valid and enforceable contract between Checkpoint and Century.

125.    Checkpoint performed all of its obligations under the Purchase Agreement.

126.    Century breached the Purchase Agreement by making and selling the Century Knock-Offs, as alleged above.

127.    Century breached the Purchase Agreement by making unauthorized public disclosures about the Purchase Agreement and the products that Century manufactured for Checkpoint under the Purchase Agreement, as alleged above.

128.    Century's actions constitute material breaches of the Purchase Agreement.

129.    Century's breaches of the Purchase Agreement have caused and will continue to cause Checkpoint to incur damages and irreparable harm.

WHEREFORE, Checkpoints asks that the Court:

A.     Enter judgment in favor of Checkpoint and against Century on Count III.

B.     Award damages adequate to compensate Checkpoint in an amount to be
       determined at trial, together with prejudgment and post-judgment interest and
       Checkpoint's reasonable attorneys' fees and costs; and

C.     Award such other and further relief as justice may require.

## COUNT IV
## BREACH OF CONTRACT
### (Against USS)

130.     Checkpoint repeats and incorporates the averments contained in paragraphs 1

through 129 above, as if fully alleged herein.

131.     USS's duplication and publication of portions of the Alpha Home Deport Manual

without Checkpoint's consent or authorization, as demonstrated in Exhibits I and J attached

hereto and alleged above, infringes Checkpoint's copyright in that material in violation of the

Copyright Act, 17 U.S.C. §501, *et seq.*

132.     USS's conduct constitutes the willful infringement of Checkpoint's copyrights in

the Alpha Home Depot Manual.

133.     By reason of the foregoing facts, Checkpoint is entitled to injunctive and

monetary relief against USS pursuant to 17 U.S.C. §§502 through 504.

WHEREFORE, Checkpoints asks that this Court:

A.     Enter judgment in favor of Checkpoint and against USS on Count IV.

B.     Enjoin USS, its agents, employees, successors, assigns, and all other persons
       acting in concert with or affiliated with it from copying, reproducing, duplicating,
       disseminating, distributing, maintaining, uploading, or otherwise using any
       unauthorized portion, excerpt, reproduction, or depiction of Checkpoint's Alpha
       Home Depot Manual or other copyrighted materials, and from otherwise
       infringing Checkpoint's copyrights;

C.     Order USS to file, within 30 days of the issuance of the injunction and/or order of
       impoundment, a sworn report setting forth in detail the manner in which it has

complied with the injunction and order of impoundment;

D.  Order USS to provide an accounting of all profits derived from copying, using, distributing, or marketing unauthorized reproductions of the Checkpoint product manual which is the subject of this Complaint;

E.  Award Checkpoint its actual damages for willful infringement; and

F.  Award such other and further relief as justice may require.

/s/ James F. McCarthy, III
James F. McCarthy, III (0002245)
Trial Attorney for Plaintiff
Sand & Sebolt
Aegis Tower
4940 Munson Street, N.W., Suite 1100
Canton, Ohio 44718
330.244.1174

Robert J. Palmersheim
(palmersheim@sw.com)
Marcus D. Fruchter
(fruchter@sw.com)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
312.701.9300

and

Joseph A. Sebolt
(joes@sandandsebolt.com)
Laura Beoglos
(laurab@sandandsebolt.com)
Sand & Sebolt
Aegis Tower
4940 Munson Street, N.W., Suite 1100
Canton, Ohio 44718
330.244.1174

## JURY DEMAND

Checkpoint demands trial by jury on all issues and claims to which it is entitled.

/s/ James F. McCarthy, III
James F. McCarthy, III

KTBH: 4851-6175-4889, v. 2