UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHECKPOINT SYSTEMS, INC., | ) | CASE NO. 5:11CV1199 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| HANGZHOU CENTURY CO., LTD., | ) | OPINION & ORDER |
| et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions brought by Plaintiff Checkpoint Systems, Inc. (Checkpoint) to amend the Complaint. Defendants oppose the motions, and Defendant Universal Surveillance Corporation (USS) seeks sanctions in the form of attorney's fees to cover the cost of responding to the first motion to amend. Specifically, the Court shall address herein: Checkpoint's motion for leave to amend the Complaint to remove a copyright infringement claim against USS (Doc. No. 34); the motion of USS for attorney's fees (Doc. No. 36); and Checkpoint's motion for leave to amend the Complaint to remove certain patent claims against USS and Defendant Hangzhou Century Co., Ltd (Century) (Doc. No. 42). All motions are fully briefed and ripe for disposition.

*Background*

Checkpoint is a Pennsylvania corporation, which manufacturers and supplies "products that help retailers and manufacturers reduce product theft, enhance self-availability for customers, and improve supply-chain efficiencies." (Complaint at ¶ 1,

Doc. No. 1, Page ID # 2.) Checkpoint sells its theft deterrent devices to a variety of national retailers, including Sears, Wal-Mart, Target, and Kohl's. (*Id*. at ¶ 16, Page ID # 4.) Century is a Chinese corporation that also makes anti-theft devices that are sold and distributed in the United States by USS. (*Id.* at ¶ 7, Page ID # 3.) USS, in turn, is a California corporation, with its principal place of business in Rancho Cucamonga, California, and serves as the largest distributor of Century products in North America (*Id.* at ¶¶ 2, 8, Page ID # 2-3.)

On March 15, 2006, Checkpoint and Century entered into a purchase agreement whereby Century agreed to make electronic article surveillance (EAS) hard tags for Checkpoint. (*Id*. at ¶ 18, Page ID # 4; Purchase Agreement, Doc. No. 1-1, Page ID # 24.) In connection with this joint venture, Checkpoint provided Century with the concepts, designs, specifications, test equipment, and other proprietary information to assist Century in manufacturing the EAS tags for Checkpoint. (Compl. at ¶ 21.) Checkpoint provided Century with similar proprietary information relating to Checkpoint's Hard Tag@Source (HT@S) product, which is applied to apparel during the manufacturing process, and can be recycled after each use. (*Id*. at ¶¶ 30-32.) Due to the success of the first generation of the HT@S product, known as the Gen1 Hard Tag, Checkpoint developed the second generation of the product (Gen2 Hard Tag). Century worked with Checkpoint to build the Gen2 Hard Tag, once again using Checkpoint's designs and other proprietary information. (*Id.* at ¶¶ 33-34.) All of the security devices developed by Century, and which are at issue in the present case, are protected by patents issued by the United States Patent and Trademark Office. (*Id.* at ¶¶ 36-50.)

By its Complaint, Checkpoint alleges that Century and USS infringed one or more claims of at least seven of Checkpoint's U.S. patents. On June 10, 2011, Checkpoint brought suit against Century and USS. The Complaint raises a patent infringement claim against each defendant, as well as a breach of contract claim against Century, and a copyright infringement claim against USS. The copyright infringement claim alleges that USS publicized Checkpoint's Alpha Home Depot Manual without Checkpoint's consent or authorization. Checkpoint seeks injunctive and monetary relief. Century has filed a patent infringement counterclaim against Checkpoint involving two U.S. patents. (Century Answer and Counterclaim at ¶¶ 167-231, Doc. No. 13, Page ID # 371-380.) USS has also filed a separate action, asserting antitrust violations, against Checkpoint. That matter is pending in another court in this district. *See Universal Surveillance Corp. v. Checkpoint Sys., Inc.*, Case No. 5:11-cv-1755.

The present case was delayed for several months while Checkpoint attempted to serve Century in China. On January 3, 2012, the Court conducted a Case Management Conference. At the conference, counsel for defendants expressed his concern over the number of complex issues and claims in the action. In response, the Court encouraged the parties to consider whether the case could be streamlined by possibly eliminating certain claims or otherwise narrowing the scope of the litigation. Also during the CMC, the parties discussed with the Court Checkpoint's need to review Century's source code for certain products, and Century agreed to provide that source code to Checkpoint in an expedited fashion.

On January 20, 2012, Checkpoint filed a motion for leave to file an amended complaint, which would remove the copyright infringement claim against USS.

(*See* Doc. No. 34.) Checkpoint represented that the impetus for the motion was the Court's suggestion that the parties re-evaluate the claims raised, and that the amendment would have the effect of streamlining the litigation.

USS opposed the motion, insisting that any dismissal should be with prejudice, and further seeking attorney's fees under the Copyright Act as the "prevailing party." (*See* Doc. No. 36.) According to USS, representatives of Checkpoint told industry purchasers at a recent loss prevention industry trade show that USS was not a lawful, ethical competitor, citing the existence of the present litigation. USS claims that Checkpoint "has used its copyright infringement claim as a competitive weapon in an attempt to damage USS in the marketplace and to provide Checkpoint with an unfair competitive advantage." (Doc. No. 36, Page ID # 667.) It further suggests that Checkpoint is now seeking to abandon its copyright infringement claim in order to "inflate" USS's litigation costs. (*Id.*)

Checkpoint challenges these contentions, insisting that its decision to eliminate the copyright infringement claim was motivated solely by a desire to narrow the issues in the case. While it maintains that the "copyright claim is significant and symptomatic of defendants' disregard for Checkpoint's intellectual property rights," Checkpoint explains that the legal and factual issues involved in the copyright infringement claim are distinct from the patent and breach of contract claims that are the focal point of the litigation. (Doc. No. 38, Page ID # 682-83.)

On April 9, 2012, Checkpoint filed a motion for leave to file a second amended complaint. (*See* Doc. No. 42.) By this motion, Checkpoint sought to remove certain patent infringement claims against Century and USS. In support of the motion,

4

Checkpoint again cited the Court's encouragement to streamline the litigation. Checkpoint also represented that the claims it seeks to withdraw are more complicated to explain to a jury than the remaining patent claims, and noted that it would not be cost-effective to pursue these complex claims. (Doc. No 45, Page ID # 821.) Checkpoint posits that any delay in bringing this second motion to amend was caused by Century's delay in providing the source code,[1] which Checkpoint insists that it needed to review before it could make any determination as to whether any patent claims could be eliminated.

Defendants oppose this motion, claiming that "[h]aving received the benefit of publicizing the existence [of] this lawsuit to the trade, Checkpoint now seeks, for the second time, to walk away from claims that should never have been brought in the first place." (Doc. No. 44, Page ID # 756.) According to Defendants, the patent claims Checkpoint seeks to abandon should be dismissed with prejudice because Checkpoint failed to properly investigate the accused products in relation to the abandoned patents. Instead, by relying on the source code produced by Century, Checkpoint shifted the expense of investigating the claims to Defendants.

Checkpoint denies Defendants' accusations of inadequate investigation and attempted cost shifting, and emphasizes that it is not seeking to eliminate these patent

---

[1] The source code in question was Century's proprietary source code. Checkpoint explains that "[t]he source code is the computer program complied by a programmer to provide operating instructions and functions to the electronic devises. The source code discloses the operating functions of the electronic device." (Doc. No. 42, Page ID # 731.)

5

claims because they lack merit. Rather, it reiterates that the elimination of these claims will streamline the litigation, insists that Defendants will suffer no prejudice as a result of the proposed amendment, and underscores the fact that it was defense counsel that made the unsolicited offer to provide Checkpoint with expedited discovery relative to Century's source code.

*Law and Discussion*

The parties agree that motions to amend the pleadings to eliminate certain claims are properly brought under Rule 15(a) of the Federal Rules of Civil Procedure. *Mgt. Investors v. United Mine Workers*, 610 F.2d 384, 394 n.22 (6th Cir. 1979) ("Where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants the problem may technically be regarded as one of amendment that is governed by Rule 15."); *see Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988) (applying Rule 15 to a motion to withdraw certain claims); *Paglin v. Saztec Int'l Inc.*, 834 F. Supp. 1184, 1189 (W.D. Mo. 1993) (same); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1474 (3d ed. 2011).

Under Rule 15(a)(2), a party may amend its pleading only with the opposing party's consent (which was not obtained here) or with the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court, however, has identified "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." as sufficient reasons for a court to exercise its discretion to deny a motion for leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Checkpoint argues that because none of the *Foman* factors, such as undue delay or bad faith, are present, leave to amend should be freely given.

*Checkpoint's First Motion to Amend*

With respect to Checkpoint's request for leave to eliminate the copyright infringement claim against it, USS agrees that the copyright claim should be dismissed, but believes that the dismissal should be with prejudice. In *Wakefield v. Northern Telecom,* 769 F.2d 109, 114 (2d Cir. 1985), a case cited by USS, the Second Circuit observed that:

> Whether we view the question as arising under Fed. R. Civ. P. 15 or 41(a)(2), the trial court has considerable discretion in deciding whether to allow a withdrawal of a claim without prejudice. In general, the court may allow such a dismissal if the defendant will not be prejudiced thereby, *Hoffmann v. Alside, Inc*., 596 F.2d 822, 823 (8th Cir. 1979), and should consider the defendant's effort and expense in defending the action as well as the plaintiff's reasons for needing such a dismissal. *Pace v. Southern Express Co*., 409 F.2d 331, 334 (7th Cir. 1969).

Similarly, in the context of a Rule 41(a) voluntary dismissal of an entire action, the Sixth Circuit has held that a trial court should permit such a dismissal without prejudice in situations where a defendant would not suffer "plain legal prejudice." *See Jones v. Western Reserve Transit Auth.,* 455 F. App'x 640, 643 (6th Cir. 2012); *Grover by Grover v. Eli Lilly & Co.,* 33 F.3d 716, 718 (6th Cir. 1994). In order to determine whether a defendant will suffer plain legal prejudice, courts are directed to consider "such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, plaintiff's explanation of the need for the dismissal and whether a motion for summary judgment

has been filed by the defendant." *Maldonado v. Thomas M. Cooley Law Sch.*, 65 F. App'x 955, 956 (6th Cir. 2003) (citing *Grover*, 33 F.3d at 718).

The litigation is still in the early stages, no dispositive motions have been filed, and no trial date has been set. Further, while the parties have begun to exchange written discovery, USS has not suggested that it has expended tremendous resources, to date, defending the copyright infringement claim against it. Further, USS's unsupported representation that the dismissal of this claim would somehow "inflate" USS's litigation costs is baffling inasmuch as the narrowing of claims and allegations usually results in a corresponding reduction in litigation expenses. *See Paglin*, 834 F. Supp. at 1190 (permitting the withdrawal of certain counts would "spare the defendants the effort and expense of preparing and presenting their defense" to those counts). USS fails to explain how reducing the number claims against it will, in any way, increase litigation costs.

Still, USS claims that it has been prejudiced by what it believes are baseless attacks upon its character. In support of its position, USS offers the affidavit of Adel Sayegh, President of USS. (*See* Doc. No. 36-1.) In his affidavit, Sayegh notes that he has "learned from numerous attendees" at a security providers' trade show that Checkpoint has published its Complaint in this matter to certain customers and potential customers of USS. (*Id.* at ¶, Page ID # 676.) He also claims that he has "learned that Checkpoint told these customers and potential customers that its Complaint demonstrated that USS was not a lawful or ethical company." (*Id.*) Finally, he offers his belief that these alleged false statements have damaged USS's reputation in the marketplace. (*See Id.* at ¶¶ 4-7, Page ID # 676.).

The Court finds that there are several problems with this offering. First, it is clear from the affidavit that Mr. Sayegh lacks any personal knowledge of the actions and statements of which he complains. Rather, his affidavit relies exclusively on unsubstantiated hearsay statements from unidentified individuals or entities. The Court is simply unwilling to base the extreme remedy of dismissal with prejudice upon such unreliable evidence.[2] Likewise, Mr. Savegh's "belief" that USS has been damaged, without any support, is insufficient to establish prejudice. *See Giles v. Univ. of Toledo*, 241 F.R.D. 466, 470 (N.D. Ohio 2007) (statements based on "belief" or "understanding," without substantiating facts, cannot establish the truth of the matters asserted).

Second, USS fails to explain how the dismissal of one claim from a multi-claim Complaint is evidence that the claim was brought for the purpose of harassing defendants. USS does not suggest that Checkpoint specifically used the copyright claim to discredit it with customers and potential customers. Rather, it accuses Checkpoint of publishing the existence of the lawsuit (which is a matter of public record) to support the alleged smear campaign. It is significant to the pending motions that Checkpoint is not seeking to dismiss the entire action. As such, this is not a case where a litigant filed an action only to voluntarily dismiss the entire action after it has obtained some mileage out

---

[2] In fact, in other contexts, such evidence would be struck as incompetent. *See Automatic Radio Mfg. Co. v. Hazeline Research, Inc.*, 339 U.S. 827, 831 (1950) (Under Fed. R. Civ. P. 56(e), affidavits based on information and belief, instead of known facts, are not proper), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969); *see e.g., Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469-74 (N.D. Ohio 2007) (striking hearsay statements made on belief and understanding that were unsubstantiated by specific facts).

of harassing its opponents.[3]

Such evidence carries even less weight when it is considered in light of the fact that Checkpoint's request to withdraw the copyright claim came little more than two weeks after the Court encouraged the parties to re-examine the case and determine if it could be streamlined. Checkpoint's explanation that it believed that its copyright claim against USS would detract from the focus of this patent case is entirely consistent with the Court's directive, and represents an appropriate reason for seeking an amendment. *See Paglin*, 834 F. Supp. at 1190 (permitting the withdrawal of certain discrimination claims, and noting that such action would "simplify and focus the issues presented by this case"); *see also Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 954 (6th Cir. 2009) (rejecting a defendant's request for costs associated with a voluntary dismiss under Rule 41(a)(2) where the plaintiff had, at the court's urging, weighed the costs and benefits of continuing to litigate the cases).

For all of the foregoing reasons, the Court finds that leave to amend to remove the copyright claim against USS should be freely given. Further, because the Court finds credible Checkpoint's reason for seeking the amendment, and further finds that USS will not be prejudiced thereby,[4] such a withdrawal is without prejudice.

---

[3] It is unclear whether USS's accusations relating to Checkpoint's alleged statements at the recent trade show, if substantiated, would support a separate tort action for defamation or libel. The motions to amend the Complaint by eliminating certain, but not all claims, do not, however, provide an opportunity for USS to use Rule 15 to backdoor a request for tort damages.

[4] The fact that these claims could be brought again, notwithstanding certain barriers such as collateral estoppel, does not constitute sufficient prejudice. "Courts have consistently held that 'plain legal prejudice' does not result merely from the prospect of a second lawsuit on identical issues." *University Estates, Inc. v. City of Athens*, No. 2:09-cv-658, 2011 U.S. Dist. LEXIS 53414, at *8-*9 (S.D. Ohio May 18, 2011) (citations omitted). *See Grover by Grover*, 33 F.3d at 718 (citations omitted).

*USS's Motion for Attorney's Fees under the Copyright Act*

USS also seeks to recover its attorney's fees incurred in defending Checkpoint's copyright infringement claim. Section 505 of the Copyright Act of 1976 authorizes an award of fees to the "prevailing party" in a suit under the Act. 17 U.S.C. § 505. *See Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807 (6th Cir. 2005). However, "even a prevailing party is not automatically awarded fees because such fees are to be awarded only as a matter of the Court's discretion, and only when equity requires such an award." *Elektra Entm't Group v. Licata*, Case No. 07-cv-569, 2008 U.S. Dist. LEXIS 64852, at *13-*14 (S.D. Ohio Aug. 25, 2008) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994)). *See Bridgeport Music*, 410 F.3d at 807. The Supreme Court has held that lower courts should consider such factors as "'frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty*, 510 U.S. at 535 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). *See Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 361 (6th Cir. 2007). In exercising its discretion, a court should remain faithful to the purposes of the Copyright Act and treat prevailing plaintiffs and defendants equally. *Id.* at 362. The Sixth Circuit has observed, however, that "it generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing party when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004).

The Court begins with the question of whether USS is a "prevailing party" under the Copyright Act. The Sixth Circuit has held that, "[i]n copyright infringement

11

cases, '[g]enerally, the prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit.' " *Thoroughbred Software*, 488 F.3d at 362 (citation omitted). With respect to a different federal statute containing a similar "prevailing party" requirement for the issuance of attorney's fees, the Supreme Court has held that a "prevailing party is one who has been awarded some relief by the court…." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-05 (2001). In so ruling, the Court observed that the key inquiry is whether some court action has created a "material alteration in the legal relationship of the parties." *Id*. at 604. Courts have applied the Supreme Court's "material alteration" test to copyright infringement claims to find that a voluntary dismissal without prejudice by a plaintiff did not materially change the legal relationship between the plaintiff and defendant because the defendant remained subject to the risk of re-filing. *See, e.g., Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009), *cert. denied*, *Loose v. Cadkin*, 130 S. Ct. 1895 (2010); *see also Bridgeport Music v. London Music, U.K.*, 226 F. App'x 491, 493-95 (6th Cir. 2007) (noting the existence of, without ruling on the applicability of, *Buckhannon* to copyright claims that are voluntarily dismissed *with* prejudice, and affirming the denial of attorney's fees to defendants); *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 164 (1st Cir. 2007) (holding *Buckhannon* material alteration test applies to copyright claims, and concluding dismissal for lack of subject matter jurisdiction does not confer prevailing party status on a defendant).

    Checkpoint's decision to voluntarily dismiss what it maintains is a viable claim does not mean that Century has succeeded on a significant issue. *See, e.g., Christopher & Banks Corp. v. Dillard's, Inc.,* 805 F. Supp. 2d 693, 697 (S.D. Iowa 2011)

12

(voluntary dismissal of certain plaintiffs who were improperly joined in the lawsuit was a technical or *de minimis* victory that did not involve the success on a significant issue). Nor does such a decision materially alter the relationship between Checkpoint and USS, as Checkpoint remains free to bring this claim at a later time. *Cadkin*, 569 F.3d at 1148-49. Moreover, there is nothing in the history of the Copyright Act, or the supporting case law, that would suggest that the Act was meant to penalize a party for seeking to streamline its case. The Court finds, therefore, that Century is not a prevailing party, and cannot recover attorney's fees under the Copyright Act.

Even if Century enjoyed "prevailing party" status, a weighing of the *Fogerty* factors would not lead this Court to make a discretionary award of fees. *See, e.g., Bridgeport Music*, 226 F. App'x at 495-98) (applying the *Fogerty* factors as the prevailing standard for attorney's fees award determinations); *Bridgeport Music*, 410 F.3d at 807-08 (same). Again, the request to amend the Complaint to eliminate a claim came immediately after the Court encouraged the parties to re-evaluate the claims and narrow the issues. Checkpoint underscores its confidence in the validity of its abandoned claim by noting that "[l]est there be any doubt about the strength of Count IV, one need only compare the Checkpoint-Alpha manual to the USS manual (Complaint at Exs. I and J) to see that the USS manual is almost an exact replica of Checkpoint's work." (Doc. No. 38, Page ID # 683.) Century offers nothing beyond Checkpoint's request to amend as evidence that the claim was frivolous, and there is nothing in the record, to date, that would suggest that this claim was not a *bona fide* effort to seek redress.[5] *See Blackburn v.*

---

[5] Additionally, it would appear, and USS does not argue to the contrary, that Count IV of the Complaint adequately pled a claim for copyright infringement. *See Bridgeport Music*, 226 F. App'x at 497.

*City of Columbus*, 60 F.R.D. 197, 198 (S.D. Ohio 1973) (because plaintiff acted in good faith, attorney's fees were not appropriate); *Network Caching Tech., LLC v. Novell, Inc.,* No. C-01-2079 VRW, 2003 U.S. Dist. LEXIS 9881, at *22 (N.D. Cal. Mar. 21, 2003) ("the court is reluctant to hold that withdrawal of claims or theories of infringement alone is sufficient to conclude that these claims were baseless"). Contrary to the belief of USS and its president, the Court cannot say, at this point in the litigation, that the copyright claim was brought to harass and embarrass USS, or to abuse the judicial process. Because the Court must conclude at this juncture that both the decision to bring the claim, as well as the subsequent decision to dismiss the claim, was objectively reasonable, the Court must also conclude that there is no need to deter such behavior in the future. Further, a finding of good faith and a lack of frivolousness, coupled with other previously discussed factors, such as the limited nature of discovery and the absence of any evidence of prejudice to USS, counsel against an award of attorney's fees.[6] *See University Estates v. City of Athens,* No. 2:09-cv-758, 2011 U.S. Dist. LEXIS 53414, at *12-*13 (S.D. Ohio May 18, 2011). The motion of USS for attorney's fees is, therefore, DENIED.

---

[6] USS appears to argue that attorney's fees are also available under Rule 41(a). Emphasizing the fact that it is seeking to remove a claim under Rule 15, and not Rule 41(a), Checkpoint notes that Rule 15(a) does not provide for the award of fees. While leave to drop claims is properly considered under Rule 15, and leave to do so should be freely given, the Court retains the discretion to "impose conditions [such as the award of attorney's fees] upon leave to amend to eliminate an issue or claims as it would upon a voluntary dismissal under Rule 41(a)(2)." *Mgt. Investors*, 610 F.2d at 394 n.22. However, Century's conclusory statement that the copyright claim was baseless is insufficient to support such an award. *See Wakefield*, 769 F.2d at 115. Unsupported contentions that Checkpoint engaged in bad faith are likewise insufficient to support such an award. *University Estates, Inc. v. City of Athens*, No. 2:09-cv-658, 2011 U.S. Dist. LEXIS 53414, at *11 (S.D. Ohio May 18, 2011). As set forth above, there is no competent evidence in the record to support a finding that the claim was not a *bona fide* effort to seek redress, or that it was brought for purposes of harassment. Additionally, as previously stated, other relevant factors, such as the fact that the case is in its infancy, with discovery in the early stages, weigh against an award of attorney's fees.

*Checkpoint's Second Motion to Amend*

Checkpoint seeks to further amend its Complaint to eliminate certain patent claims against defendants, once again citing the desire to streamline the case. Defendants oppose any dismissal of these claims without prejudice, insisting that Checkpoint failed to properly investigate the validity of the claims before bringing suit. In support of its position, it cites a letter from Checkpoint's counsel wherein counsel indicated that source code could be extracted from the already converted assembly code, but expressed the opinion that such an endeavor would be expensive. (Doc. No. 44-4, Page ID # 819.)

A plaintiff and his counsel have a duty to investigate the legal and factual basis for any claims brought, and a failure to perform such investigation may lead to sanctions. *See Merritt v. Int'l Ass'n of Machinists and Aero. Workers*, 613 F.3d 609, 628 (6th Cir. 2010) (affirming the awarding of sanctions where plaintiff's counsel failed to make a reasonable inquiry concerning the allegations in the complaint); *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988) (Rule 11, as amended, "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.") (quoting Advisory Committee Note, Fed. R. Civ. P. 11). "[I]n the context of patent infringement actions," Rule 11 requires that an attorney "at a bare minimum, apply the claims of each and every patent that is being brought in the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). The obligation to investigate is a continuing one, and counsel should conduct discovery or otherwise develop a factual

15

foundation for his client's claims. *See Dearborn St. Bldg. Assocs., LLC v. Huntington Nat'l Bank,* 411 F. App'x 847 (6th Cir. 2011) ("Rule 11 imposes upon litigants a continuing obligation to refrain from pursuing meritless or frivolous claims during the course of proceedings.") Counsel's conduct in carrying out its investigatory duties is measured by an objective standard of reasonableness. *Merritt,* 613 F.3d at 626.

Checkpoint insists that it did conduct a pre-filing investigation into the legal and factual basis for its patent claims, and that its decision to abandon certain claims has nothing to do with the merit of these claims. Instead, it explains that its decision to dismiss these claims was based on its belief that the claims in question were more complicated than the remaining patent claims, and that it would not be cost-effective to pursue these more complex and confusing claims. That Checkpoint could have conceivably reached this strategic decision sooner by relying on already existing assembly code does not suggest that Checkpoint failed to properly investigate these claims before filing, or that it wrongfully and knowingly prosecuted frivolous claims.

Again, Century relies primarily on Checkpoint's decision to dismiss these claims to demonstrate that Checkpoint and its counsel failed to properly investigate before bringing suit.[7] Even if such a decision had not followed the Court's urging that the

---

[7] Century does point to other litigation wherein another court sanctioned Checkpoint after determining that Checkpoint's infringement expert failed to test the accused's products. There is nothing before *this* Court, however, that would suggest that counsel's pre-filing investigation in *this* case was not objectively reasonable.

16

parties re-evaluate the claims and narrow the issues, Defendants' evidence would still be woefully insufficient, on its own, to establish that the abandoned claims were baseless. *See Network Caching Tech.,* 2003 U.S. Dist. LEXIS 9881, at *22. Further, Defendants have failed to even suggest that they will suffer plain legal prejudice from a dismissal without prejudice of these claims. Not only is the case in the early stages, but the parties have not even begun to brief the issue of claims construction or prepare for the *Markman* hearing, which is not scheduled to take place until November 30, 2012. Consequently, the Court finds that a dismissal of these claims without prejudice is proper.

*Conclusion*

The Court is concerned that there have already been several false starts in this matter. The motions to amend were an obvious response to the Court's urging that the parties narrow the issues in the case, and Defendants' insistence that the motions had more sinister origins is not supported by the record. Going forward, the Court trusts that the parties will remain focused on the matters that will advance the case, and not divert the Court's attention with unnecessary motions.

For all of the foregoing reasons, Checkpoint's motions to amend the Complaint (Doc. Nos. 34 and 42) are GRANTED. USS's motion for attorney's fees (Doc. No. 36) is DENIED.

**IT IS SO ORDERED**.

Dated: June 13, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

17