IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHECKPOINT SYSTEMS, INC.,** ) | Case No. 5:11-cv-01199 |
| ) | |
| Plaintiff, ) | (Judge Sarah Lioi) |
| ) | |
| v. ) | **THIRD AMENDED COMPLAINT FOR** |
| ) | **INJUNCTIVE RELIEF AND MONEY** |
| **HANGZHOU CENTURY CO., LTD** ) | **DAMAGES** |
| **d/b/a CENTURY PLASTIC &** ) | |
| **ELECTRONIC CO., LTD., et al.,** ) | (DEMAND FOR JURY TRIAL) |
| ) | |
| Defendants. ) | |

Plaintiff Checkpoint Systems, Inc. ("Checkpoint") brings this Third Amended Complaint against Defendants Hangzhou Century Co., Ltd. d/b/a Century Plastic & Electronic Co., Ltd. ("Century") and Universal Surveillance Corporation d/b/a Universal Surveillance Systems ("USS") for patent infringement and breach of contract. For its Third Amended Complaint, Checkpoint states the following:

## NATURE OF THE CASE

1. Checkpoint is a leading producer and supplier of products that help retailers and manufacturers reduce product theft, enhance shelf-availability for customers, and improve supply-chain efficiencies. Checkpoint's products are based on many years of technology expertise and market-leading applications. Checkpoint designs, manufacturers, and sells high-tech anti-theft products and solutions, providing products to the top retailers in the United States in addition to thousands of other retailers in the United States and around the world.

2. In contrast to Checkpoint, Century and USS are relatively recent entrants in the loss prevention industry. Century is primarily an original equipment manufacturer ("OEM") that makes or assembles retail anti-theft devices for Checkpoint and other companies, often using the designs, specifications, concepts, or molds that are supplied to it by others. The products that

Century manufactures are usually sold under its customers' labels and brand names.  USS is a distributor of retail loss prevention goods and services.  Upon information and belief, USS is the largest distributor of Century products in North America.

3. Century and USS are waging a coordinated attack on Checkpoint's intellectual property, contract rights, and market leading innovations.  Specifically, Century and USS are making, using, selling, offering for sale, and/or importing in the United States retail anti-theft devices that infringe at least seven of Checkpoint's published United States patents.  Century is also breaching its contractual obligations to Checkpoint by selling knock-off versions of Checkpoint's products, misusing Checkpoint's confidential information, and making unauthorized disclosures regarding Checkpoint and its products.

## PARTIES

4. Checkpoint is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its corporate headquarters in Philadelphia, Pennsylvania.  Checkpoint and its Alpha Products division ("Alpha") have an office and manufacturing facility in Canton, Ohio.

5. Century is a corporation organized under the laws of the People's Republic of China and located in Hangzhou, China.

6. Century became a Checkpoint OEM in 2006, making electronic article surveillance ("EAS") hard tags for sale to Checkpoint's customers around the world.

7. Century also makes anti-theft products that are sold and distributed in the United States by USS.

8. USS is a corporation organized under the laws of the State of California, with its principal place of business in Rancho Cucamonga, California.

9. USS sells EAS and other theft prevention goods and services.

10. Upon information and belief, the majority of the products sold by USS are built

by Century.

## JURISDICTION AND VENUE

11. This action alleges patent infringement arising under the patent laws of the United States (Title 35 of the United States Code). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1338, and under the doctrine of pendant jurisdiction.

12. Century and USS transact business in, and have other contacts with, the State of Ohio and this District, and are therefore subject to personal jurisdiction in this District. Century and USS have committed acts of infringement in this District.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391 and 28 U.S.C §1400.

## FACTUAL BACKGROUND

**Checkpoint's Market Leading Innovation**

14. Founded in 1967, Checkpoint is the leading multinational manufacturer of technology-driven integrated solutions and security systems that protect people and assets around the world.

15. For more than 40 years, Checkpoint has been the recognized pioneer and leading innovator in the retail anti-theft industry. Among other things, Checkpoint's products are used by retailers to protect a wide variety of consumer goods, including apparel, electronics, video games, DVDs, personal items, home and kitchen accessories, wine and spirits, and sports equipment.

16. Checkpoint's products are used by some of the most successful and recognizable retailers in the world, including Sears, Wal-Mart, Target, CVS, Toys R' Us, Macy's, Rite Aid, Best Buy, Gap, Home Depot, Lowe's, Staples, Kohl's, Carrefour, and BJ's Wholesale Club.

17. Checkpoint invests substantial resources in product development. It has designed and developed unique products that are generally available for retailers and manufacturers, and

3

custom products designed to meet individual customer needs.

**The Century-Checkpoint Purchase Agreement**

18. Pursuant to the terms of a March 15, 2006 Purchase Agreement between Checkpoint and Century (the "Purchase Agreement"), Checkpoint and Century entered into an OEM relationship in which Century agreed to build EAS hard tags for Checkpoint.  A true and correct copy of the Purchase Agreement is attached to the complaint as Exhibit A.

19. Because of the Purchase Agreement, Checkpoint relied upon Century and viewed Century as an important business partner.

20. Correspondingly, Century repeatedly assured Checkpoint that it highly valued Checkpoint and the parties' OEM relationship.

21. To facilitate the manufacture of Checkpoint's products under the Purchase Agreement, Checkpoint provided Century the concepts, designs, specifications, test equipment, molds, tooling, customer requirements, and other confidential information and technology which are necessary to build Checkpoint's products.

22. In return, Checkpoint insisted upon and received agreement from Century that it would not misuse or disclose the information and materials supplied to it by Checkpoint in connection with the Purchase Agreement.

23. Specifically, Century agreed to use Checkpoint's confidential product information and materials exclusively for the manufacture of products for Checkpoint.  (Purchase Agreement §§10.0, 11.1, 19.0.)

24. Century also promised not to disclose any of Checkpoint's confidential information without Checkpoint's prior consent.  (Purchase Agreement §19.0.)

25. The parties agreed that Checkpoint is the sole owner of all intellectual property

4

provided to Century in connection with the Purchase Agreement. (Purchase Agreement §18.3.)

26. The Purchase Agreement also provides that Checkpoint owns all products built for Checkpoint by Century. (Purchase Agreement §12.1.)

27. Century assumed certain noncompetition obligations under the Purchase Agreement. Specifically, Section 11.1 of the Purchase Agreement provides:

> 11.0 EXCLUSIVITY AND NON-COMPETE
>
> 11.1 Supplier agrees not to sell CKP products or products made with CKP designs and/or specifications to any other party. Furthermore, Supplier agrees not to compete with CKP by selling similar, competitive products incorporating some or all of CKP's design specifications to other parties, including any other manufacturers or EAS or RFID equipment. Supplier also agrees not to sell similar, competitive products to CKP's direct customers.

(Purchase Agreement §§11.0 and 11.1.)

28. Century further agreed not to disclose its OEM status, the products it manufactured for Checkpoint, or any of the terms and conditions of the parties' agreement without Checkpoint's express written consent. (Purchase Agreement §20.7.)

**Checkpoint's Innovative Hard Tag@Source Program**

29. Among the market-leading solutions that Checkpoint designs, manufactures, and sells is its Hard Tag@Source ("HT@S") product and associated program.

30. The HT@S program provides retailers and their suppliers with the benefits of a strong visual theft deterrent in the form of an EAS hard tag that is applied to apparel during the manufacturing process. The HT@S program eliminates the high cost of in-store tagging by store employees and delivers manufactured products that are fully secured and ready to be placed on store shelves for customer purchase. HT@S hard tags are recycled after each use, thereby providing additional benefits and cost savings.

31. Checkpoint first developed the HT@S concept in 2007 to meet the needs of one of its customers and specially designed a new hard tag, known as the "Gen1 Hard Tag," to meet the customer's durability, performance, design, and style requirements.

32. As Checkpoint's OEM, Century built the Gen1 Hard Tag for Checkpoint pursuant to the Purchase Agreement. To do so, Century used Checkpoint's designs, specifications, form factors, molds, customer requirements, technology and other confidential information.

33. Due to the success of the Gen1 Hard Tag and to meet demands from other customers, Checkpoint subsequently expanded the HT@S program and developed a second generation HT@S hard tag, known as the "Gen2 Hard Tag."

34. Century worked with Checkpoint to build the Gen2 Hard Tag as Checkpoint's OEM, once again using Checkpoint's designs, specifications, concepts, form factors, molds, customer requirements, technology, and other confidential information.

35. Checkpoint owns all rights to the Gen1 and Gen2 Hard Tags, as well as all related intellectual property.  (Purchase Agreement §§12.1, 18.3.)

**The Checkpoint Patents**

36. Due to its substantial investment in its intellectual property and product innovation, Checkpoint has taken steps to protect it patent rights. Checkpoint is the owner of numerous United States and foreign patents.

37. On August 7, 2007, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,251,966 (the "'966 patent") for a "cable wrap security device." A true and correct copy of the '966 patent is attached to the complaint as Exhibit B.

38. Checkpoint is the owner, by assignment, of the '966 patent. Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '966

6

patent.

39. On January 27, 2009, the United States Patent & Trademark Office duly and lawfully issued U.S. Patent Number 7,481,086 (the "'086 patent") for a "cable wrap security device." A true and correct copy of the '086 patent is attached to the complaint as Exhibit E.

40. Checkpoint is the owner, by assignment, of the '086 patent. Checkpoint owns all right, title, and interest in and has standing to sue for past and future infringement of the '086 patent.

**Century and USS Infringe Checkpoint's Patents**

41. Despite its OEM relationship with Checkpoint and its promise to honor Checkpoint's intellectual property rights, Century infringed one or more claims of at least three of Checkpoint's published United Stated patents. USS, Century's largest distributor, has joined in this infringement.

42. Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T136 mini security wrap, the Century T149 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

43. USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

44. Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making,

7

selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T149 security wrap, the Century T136 mini security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

45. USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

46. On February 5, 2010, February 8, 2010 and June 1, 2010, Checkpoint advised Century of its belief that Century was infringing one or more claims of the '086 patent.

47. In response, Century stated that it valued its relationship with Checkpoint, respected Checkpoint's intellectual property rights, and was not infringing Checkpoint's patent.

48. Since that time, Checkpoint has discovered acts of infringement by Century and USS.

49. Upon information and belief, Century and USS have imported the accused devices into the United States and sold or offered to sell such devices to Toys R' Us, Macy's, The Sport's Authority, and Kohl's, among other U.S. retailers.

50. Checkpoint has been irreparably damaged by the infringing acts of Century and USS, and Checkpoint will continue to be irreparably damaged unless Century and USS are enjoined from further acts of infringement.

51. Checkpoint is entitled to recover damages adequate to compensate it for the acts of infringement by Century and USS.

52. Upon information and belief, the acts of infringement by Century and USS have been intentional and willful.

8

**Century's Violates the Purchase Agreement**

53. Century's misconduct is not limited to infringement of Checkpoint's patents. Century has also committed multiple, intentional and material breaches of the Purchase Agreement.

54. Upon information and belief, Century is making and selling EAS source tags (the "Century Knock-Offs") that are similar to, and compete with, Checkpoint's Gen1 and Gen2 Hard Tags.

55. Century previously made the Gen1 and Gen2 Hard Tags for Checkpoint and is now making the Century Knock-Offs for itself.

56. Upon information and belief, the Century Knock-Offs are based on Checkpoint's concepts and made with some or all of Checkpoint's designs, specifications, requirements, and/or other confidential information.

57. Upon information and belief, Century has offered for sale, sold, and/or is selling the Century Knock-Offs to Checkpoint's direct customers.

58. Upon information and belief, Century also offered for sale, sold, and/or is selling the Century Knock-Offs to other retailers and suppliers.

59. Century's manufacture and sale of the Century Knock-Offs constitutes a breach of Sections 11.1, 12.1, 18.3 and 19.0 of the Purchase Agreement.

60. Century also made public disclosures regarding its OEM work for Checkpoint under the Purchase Agreement without prior authorization from Checkpoint.

61. Among other instances, Century made such unauthorized disclosures in a Prospectus it issued in connection with its 2010 initial public offering on the Shenzen (China) Stock Exchange.

62. Upon information and belief, Century also made improper and unauthorized disclosures about the Purchase Agreement and the products it manufactured for Checkpoint to Checkpoint's actual and potential customers and to Checkpoint's competitors.

63. Century's unauthorized disclosures constitute a breach of Sections 19.0 and 20.7 of the Purchase Agreement.

## COUNT I
## PATENT INFRINGEMENT
### (Against Century)

64. Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 63 above, as if fully alleged herein.

65. Century has infringed at least two of Checkpoint's published United States Patents, namely the '966 patent and the '086 patent.

66. The '966 patent and the '086 patent are presumed to be valid pursuant to 35 U.S.C §282. These patents are, in fact, valid.

67. Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T136 mini security wrap, the Century T149 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

68. Century has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the Century T-149 security wrap, the Century T-136 security wrap, the USS BoxGuard, and the USS Mini BoxGuard.

69. Checkpoint has been irreparably damaged by Century's acts of infringement and

will continue to be irreparably damaged unless Century is enjoined from further acts of infringement.

70. Checkpoint is entitled to recover damages adequate to compensate it for Century's acts of infringement.

71. Upon information and belief, Century's infringement has been intentional and willful.

72. This case is an exceptional case within the meaning of 35 U.S.C. §285.

WHEREFORE, Checkpoints asks that the Court

A. Enter judgment in favor of Checkpoint and against Century on Count I;

B. Enter an injunction against Century prohibiting Century, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it from further infringement, inducement or contributory infringement of the '966 patent, the '086 patent;

C. Award damages adequate to compensate Checkpoint for the infringement that has occurred together with prejudgment interest from the date(s) infringement of the '966 patent, and the '086 patent began, and post-judgment interest;

D. Find that this is an exceptional case pursuant to 35 U.S.C. §285, and accordingly award Checkpoint its reasonable attorneys' fees and costs;

E. Award treble damages pursuant to 35 U.S.C. §284;

F. Award all other damages permitted by 35 U.S.C. §284; and

G. Award such other and further relief as justice may require.

## COUNT II
## PATENT INFRINGEMENT
(Against USS)

73. Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 72 above, as if fully alleged herein.

74. USS has infringed at least two of Checkpoint's published United States Patents, namely the '966 patent and the '086 patent.

11

75. The '966 patent and the '086 patent are presumed to be valid pursuant to 35 U.S.C. §282. These patents are, in fact, valid.

76. USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '966 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

77. USS has infringed, directly and/or through acts of contributory infringement or inducement, and continues to infringe one or more claims of the '086 patent by making, selling, offering for sale, and/or importing into the United States anti-theft devices, including the USS BoxGuard and the USS Mini BoxGuard.

78. Checkpoint has been irreparably damaged by USS's acts of infringement and will continue to be irreparably damaged unless USS is enjoined from further acts of infringement.

79. Checkpoint is entitled to recover damages adequate to compensate it for USS's acts of infringement.

80. Upon information and belief, USS's infringement has been intentional and willful.

81. This case is an exceptional case within the meaning of 35 U.S.C. §285.

WHEREFORE, Checkpoints asks that the Court

A. Enter judgment in favor of Checkpoint and against USS on Count I;

B. Enter an injunction against USS prohibiting USS, its agents, employees, successors, assigns, and all other persons acting in concert with or affiliated with it from further infringement, inducement or contributory infringement of the '966 patent and the '086 patent;

C. Award damages adequate to compensate Checkpoint for the infringement that has occurred together with prejudgment interest from the date(s) infringement of the '966 patent and the '086 patent began, and post-judgment interest;

D. Find that this is an exceptional case pursuant to 35 U.S.C. §285, and accordingly award Checkpoint its reasonable attorneys' fees and costs;

12

E.      Award treble damages pursuant to 35 U.S.C. §284;

F.      Award all other damages permitted by 35 U.S.C. §284; and

G.      Award such other and further relief as justice may require.

## COUNT III
## BREACH OF CONTRACT
### (Against Century)

82.      Checkpoint repeats and incorporates the averments contained in paragraphs 1 through 81 above, as if fully alleged herein.

83.      The Purchase Agreement constitutes a valid and enforceable contract between Checkpoint and Century.

84.      Checkpoint performed all of its obligations under the Purchase Agreement.

85.      Century breached the Purchase Agreement by making and selling the Century Knock-Offs, as alleged above.

86.      Century breached the Purchase Agreement by making unauthorized public disclosures about the Purchase Agreement and the products that Century manufactured for Checkpoint under the Purchase Agreement, as alleged above.

87.      Century's actions constitute material breaches of the Purchase Agreement.

88.      Century's breaches of the Purchase Agreement have caused and will continue to cause Checkpoint to incur damages and irreparable harm.

WHEREFORE, Checkpoints asks that the Court:

A.      Enter judgment in favor of Checkpoint and against Century on Count III;

B.      Award damages adequate to compensate Checkpoint in an amount to be determined at trial, together with prejudgment and post-judgment interest and Checkpoint's reasonable attorneys' fees and costs; and

C.      Award such other and further relief as justice may require.

                Respectfully submitted,

                /s/ James F. McCarthy III
                James F. McCarthy III (0002245)
                Trial Attorney for Plaintiff
                Katz, Teller, Brant & Hild
                255 East Fifth Street, Suite 2400
                Cincinnati, Ohio  45202-4787
                Telephone:  (513) 721-4532
                jmccarthy@katzteller.com

Steven A. Weiss
(weiss@sw.com)
Robert J. Palmersheim
(palmersheim@sw.com)
Bradley Nelson
(nelson@sw.com)
Marcus D. Fruchter
(fruchter@sw.com)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
Telephone:  (312) 701-9300

and

Joseph A. Sebolt
(joes@sandandsebolt.com)
Laura Beoglos
(laurab@sandandsebolt.com)
Matthew Delaney
(mattd@sandandsebolt.com)
Sand & Sebolt
Aegis Tower
4940 Munson Street, N.W., Suite 1100
Canton, Ohio 44718
Telephone:  (330) 244-1174

## JURY DEMAND

    Checkpoint demands trial by jury on all issues and claims to which it is entitled.

                /s/ James F. McCarthy III
                James F. McCarthy III

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Third Amended Complaint for Injunctive Relief and Money Damages was filed electronically this 27th day of November, 2012.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ James F. McCarthy III
James F. McCarthy III

KTBH: 4837-8838-4017, v.  1