**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHECKPOINT SYSTEMS, INC. | CASE NO. 5:11-CV-01199 |
| PLAINTIFF, | JUDGE SARA LIOI |
| v. | |
| HANGZHOU CENTURY CO., LTD, et al. | |
| DEFENDANTS. | |

**DEFENDANTS UNIVERSAL SURVEILLANCE CORPORATION'S AND HANGZHOU CENTURY CO., LTD'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| A. | Limitations in the Claims May Be Derived From the Specification | 1 |
| B. | A Claim Term Is Indefinite Where It Is Used in a Manner Inconsistent with the Specification | 5 |
| C. | The Prosecution History Does Not Support Reading "Permanent" into the Claims of the Asserted USS Patents | 8 |
| D. | Conclusion | 10 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*01 Communique Lab., Inc. v. Logmein, Inc.*, 687 F.3d 1292 (Fed. Cir. 2012) ..............................10

*Allen Eng. Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002)...................................6, 8

*Application of Cohn*, 438 F.2d 989 (Cust. & Pat. App. 1971)................................................6, 7, 8

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004).................................1, 2, 3, 4

*Ex Parte Craig S. Gittleman, et al.*, 2008 WL 696137 (Bd.Pat.App. & Interf. 2009) .................................................................................................................................7

*Hart-Carter Co. v. J.P. Burroughs & Son, Inc.*, 605 F.Supp 1327 (E.D. Mich. 1985) .................................................................................................................................7

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312 (Fed. Cir. 2006)..................................2, 9

*Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456 (Fed. Cir. 1998)....................................3

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004).............................1, 2, 3, 4, 5

*Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394 (Fed. Cir. 2008) ................................................2, 3, 9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .......................................................1, 5, 8, 9

*Sandisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278 (Fed. Cir. 2005) .......................................9

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) .................................................................................................................................2

*Southwall Tech., Inc. V. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995).....................................5

*The Toro Co. V. White Consol. Indus., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999) ...............................4

*Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377 ......................................................................3

### STATUTES

35 U.S.C. § 112..............................................................................................................................6, 7

Pursuant to the Court's November 30, 2012, order following the *Markman* hearing, USS and Century submit this supplemental brief to address the two issues identified by the Court and a third issue that Checkpoint stated it intends to include in its supplemental brief.

### A. Limitations in the Claims May Be Derived From the Specification

Checkpoint seeks to circumvent the public disclosure aspect of the patent laws by interpreting its claims much more broadly than the actual invention disclosed in the specifications of its asserted patents. Because the written description of the '966 and '086 patents illustrates that Checkpoint's alleged "inventions" are limited to the single embodiment for each set of claims, a fact confirmed by Checkpoint's characterization of the inventions in the prosecution history, it is entirely proper to limit the claims to those embodiments.

Claims of a patent "must be read in view of the specification," which "is always highly relevant to the claim construction analysis" and "is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). Indeed, "one purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347 (Fed. Cir. 2004). This can result in limiting the claims if the specification makes clear "that the claimed invention is narrower than the claim language might imply based on a reading of the specification as a whole." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 n.3 (Fed. Cir. 2004).

Claims are not entitled to a scope broader than the specification when the specification "repeatedly and consistently describes" the claimed invention in narrow terms. *Microsoft*, 357 F.3d at 1348. In *Microsoft*, even though the plain language of the claims did not require use of a telephone line for data transmission, the claims were found to be so limited in view of the specification as a whole. *Id*. at 1347-48. Specifically, the "Summary of the Invention" portion of the specification stated that the claimed system utilized a telephone line, and each of the

various preferred embodiments utilized a telephone line. *Id.* at 1348. The Federal Circuit thus found that these aspects of the specification were "not limited to describing a preferred embodiment, but more broadly describe the overall inventions of all three patents." *Id; see also Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1397-99 (Fed. Cir. 2008) (relying on the specification's Abstract, Summary of the Invention, and repeated use of the term "the present invention" in finding claims limited by the specification); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318-320 (Fed. Cir. 2006) (narrowly interpreting term "fuel injection system component" to require a fuel filter based on written description, including use of term "the present invention," and rejecting argument that a fuel filter is merely discussed as a preferred embodiment).

In addition, disclosure of only a single embodiment, as here, can serve as an indicator that the specification discloses the invention itself rather than a preferred embodiment of a broader concept. *See SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341-44 (Fed. Cir. 2001) ("When the 'preferred embodiment' is described as the invention itself the claims are not entitled to a broader scope than that embodiment."); *see also Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (finding that the "claims were correctly interpreted as limited" to "[t]he only embodiment described in the [asserted] patent"). Moreover, a patentee cannot argue that a claimed invention must necessarily be broader than the disclosed "preferred" embodiment, because "[t]he usage 'preferred' does not of itself broaden the claims beyond their support in the specification." *Wang*, 197 F.3d at 1383. Rather than assume that the claimed invention was intended to be broader than the disclosure in the specification, courts will interpret claims narrowly where the specification fails to teach broadly. *See Netcraft*, 549 F.3d at 1399 (rejecting broad construction and noting "[t]here is no language in the specification, much less

express language, indicating that the [specification was] meant to disclose an alternative embodiment" supporting patentee's proposed broad interpretation); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1462 (Fed. Cir. 1998) ("driving surface" limited to flat driving surfaces where "nothing in the written description suggests that the driving surfaces can be anything but flat").

Finally, courts should consider whether the prosecution history supports limiting the claims to the specification's disclosure. *See Microsoft*, 357 F.3d at 1349 (finding that a "summary of the invention" provided to the patent examiner "unambiguously reflects [patentee's] own understanding of its inventions in the [asserted] patents as being limited to the transmission of data packets over a telephone line" as disclosed in the specification); *see also Wang*, 197 F.3d at 1383-84 (finding that the prosecution history "reinforces the conclusions" derived from the narrow specification).

As discussed in detail throughout Defendants' Opening and Responding Claim Construction Briefs, the written descriptions of the '966 and '086 patents require a narrow interpretation of the claims, consistent with the disclosure in the specifications. As acknowledged by Checkpoint, each patent discloses a single embodiment relevant to the claims. *See, e.g.,* Checkpoint Opening Brief (Op. Br.) at 9, 13. Read as a whole, the specification plainly presents to one of ordinary skill in the art that this single embodiment is the claimed invention.

For example, as in *C.R. Bard*, "[s]tatements of general applicability" in the '966 and '086 patents consistently refer to a "locking member" which is separate from the cable-tightening/ratchet mechanism and located at the opposite side of the box to be secured. 388 F.3d at 866. *See, e.g.,* Abstract, Summary of the Invention at 2:43-50 ("[t]he security device of ***the present invention*** includes … a locking member which includes a fastener which snap fits to a

base"); 4:9:13 (The security device of *the present invention* is indicated generally at 1 and is shown in FIGS 1 and 2 secured about a package."), Figs. 1-5.  It further consistently describes a "key" that is integrated into the "locking member" which can be used to unlock the separate cable tightening/ratchet mechanism.  *See, e.g.,* Abstract ("[t]he *locking member includes a key portion* for unlocking the tightening mechanism"), Summary of the Invention at 63-67 ("A still further *feature of this invention* is to provide such a security device which includes a one-way ratchet which can be released by *a key formation formed on the locking mechanism* thereby eliminating the need for a separate key to release the latching mechanism.") (emphasis supplied).

Furthermore, "statements describing preferred embodiments" (indeed the only disclosed embodiment) in the written description and accompanying figures consistently and extensively describe how the cable tightening/ratchet mechanism is unlocked by insertion of this key portion of the locking member.  *C.R. Bard*, 388 F.3d at 866.  The patents describe no other way of unlocking the cable spool.  Read as a whole, the specification of the '966 and '086 patents lead to the "inescapable conclusion" that the claimed invention must be limited to the single embodiment for each set of claims, regardless of whether the claim language is so limited. *Microsoft*, 357 F.3d at 1348; *The Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1300-02 (Fed. Cir. 1999) (Claims reciting cover "including" a flow restriction ring limited to ring "permanently affixed" to cover based on only embodiment described).

As discussed in Defendants' Opening and Responding Briefs, this conclusion is cemented by Checkpoint's detailed description of "Applicant's invention" during prosecution with reference to the various elements disclosed in the specification.  *See, e.g.,* Def. Op. Br. at 16-17, 19, 20, 22.  Specifically, Checkpoint repeatedly distinguished—including underlining for emphasis—its invention over the prior art by directing the Examiner to the embodiment in the

specification. *See* Def. Op. Br., Ex. 6 at 10-11, Ex. 8 at 10-11. The law is clear, however, that one cannot limit its claims to the embodiment during prosecution, but then later seek a broader interpretation in litigation. *See Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers").

Checkpoint disregards its own characterization of the claimed invention and argues that neither the separate locking member nor the integrated key that is inserted into the cable tightening/ratchet mechanism, as well as the many other terms at issue, are required elements of its "invention." Checkpoint, however, is not entitled to have its claims interpreted "in a vacuum." *Phillips*, 415 F.3d at 1313. Rather, it must be bound by the specification in which it "repeatedly and consistently" describes its claimed invention in terms limited to the disclosed embodiments. *Microsoft*, 357 F.3d at 1348.

### B. A Claim Term Is Indefinite Where It Is Used in a Manner Inconsistent with the Specification

The terms "ratchet mechanism" and "locking member" are used inconsistently between the specification and claims of the '086 patent. This inconsistency renders the term, and therefore all claims in which it appears, indefinite. Defendants argued at the hearing that rather than inconsistency between the claims and specification, a finding of indefiniteness requires direct contradiction in the claim itself. This is not the correct standard. Moreover, even if the "direct contradiction" standard were applied the '086 claims would still be indefinite based on the vast differences between the usage of these terms in the specification and the claims.

The term "ratchet mechanism" is used throughout the specification to refer to the entire portion of the security device at the front of a merchandise box to be secured, including the housing and cable spool. *See, e.g.,* '086 patent at Abstract, 4:11-14, Fig. 1 (element 4). The

term "locking member" is consistently used to refer to the element found on the opposite side of the box to be secured, separate from the ratchet mechanism, which holds the cables in place after they have been pulled from the ratchet mechanism at the front of the box, wrapped around the box, and tightened by the spool. *See, e.g., id.* at Abstract, 4:11-14, Fig. 2 (element 5). In contrast, the claims of the '086 patent use the terms "ratchet mechanism" and "locking member" to refer to unknown components *within* the ratchet mechanism described in the specification. Checkpoint did not dispute this inconsistency during the hearing.

35 U.S.C. § 112, ¶ 2, requires that the claims of a patent "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." "Where it would be apparent to one of ordinary skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, [the court] must hold that claim invalid under § 112, paragraph 2." *Allen Eng. Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002).

It is long established that a claim can be found invalid when it requires something inconsistent with the specification. *Application of Cohn*, 438 F.2d 989, 1000-01 (Cust. & Pat. App. 1971). In *Cohn*, the predecessor to the Federal Circuit found claims indefinite based on inconsistency between the claims and specification. The specification used the term "opaque finish" to refer to a flat appearing finish which was not obtained when an alkali metal silicate was used, whereas the claims called for use of an alkali silicate to obtain an "opaque appearance." As *Cohn* recognized, because each term in the claims "must take on the meaning ascribed to it in that disclosure[, t]he result is an inexplicable *inconsistency* within each claim requiring that the rejection under 35 U.S.C. 112 on grounds of indefiniteness be sustained." *Id.* at 1001 (emphasis supplied). As the Board of Patent Appeals has more recently phrased it when

finding claims indefinite, "[a] claim also runs afoul of § 112, ¶ 2 when it is inherently *inconsistent* with what is described in the specification." *Ex Parte Craig S. Gittleman, et al.*, 2008 WL 696137, at *4 (Bd. Pat. App. & Interf. 2009) (citing *Cohn*, 438 F.2d at 1000-01) (emphasis supplied); *see also Hart-Carter Co. v. J.P. Burroughs & Son, Inc.*, 605 F. Supp 1327, 1344 (E.D. Mich. 1985) ("The conclusion is inescapable that the meaning of 'chamber' as used in the claims is different from the meaning of the same term in the specification. … Hence the claim is indistinct and confusing and fails to meet the requirements of 35 U.S.C. § 112.").

Here, the undisputed inconsistency between the way the terms "ratchet mechanism" and "locking member" are used in the specification and the claims requires a finding that the '086 patent claims are indefinite.  Checkpoint argued during the hearing that the appropriate standard under *Allen Eng.* is not whether the terms are used inconsistently but rather whether they are used in a directly contradictory fashion.  As the case law cited here illustrates, this is not correct. Courts have repeatedly found indefiniteness based on *inconsistent* usage of a term, and there is simply no requirement that specification and claims set forth polar opposite, directly contrary teachings as Checkpoint urges.  Indeed, this would undermine the overall § 112, paragraph 2 requirement that the claims distinctly point out the subject matter which the applicant regards as his invention, by permitting claims that were inconsistent with the specification as long as they are not diametrically opposed to it.

Moreover, even under the "directly contradicting" standard proposed by Checkpoint the '086 claims are still indefinite. The specification consistently uses the terms "ratchet mechanism" and "locking member" to refer to the overall, separate elements at the front and back of the box to be secured.  The claims, however, use those same terms to refer to elements within the ratchet mechanism that is described in the specification.  The claimed "ratchet

mechanism" cannot be an element of itself. The claimed "locking member" cannot be both completely separate from the ratchet mechanism, as taught in the specification, and an element of the ratchet mechanism as claimed. These paradoxes result from directly contradictory usage of the terms, and thus the claims fail the test of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Allen Eng.*, 299 F.3d at 1348.

Checkpoint also suggested during the hearing that one of ordinary skill in the art would be able to determine the scope of the '086 claims by reading the claims themselves, without paying attention to the inconsistent disclosure in the specification. But "[n]o claim may be read apart from and independent of the supporting disclosure on which it is based." *Cohn*, 438 F.2d at 1001. Indeed, the specification is the single best guide to the meaning of a disputed term and the claims may not be read "in a vacuum." *Phillips*, 415 F.3d at 1313. They must be read in light of the specification, which teaches that the "ratchet mechanism" and "locking member" are completely different structures than are required by those terms in the claims. Accordingly, the claims of the '086 patent must be found invalid for indefiniteness.

### C. The Prosecution History Does Not Support Reading "Permanent" into the Claims of the Asserted USS Patents

Checkpoint argues that a number of terms found in the independent claims of the '495 and '310 patents require a permanent connection between the lanyard and the tag body, despite the plain language of each of these terms.[1] Neither the claims at issue nor the specification, however, make any mention of "permanently" connecting the lanyard and the tag body. Faced with such a complete lack of support for its position, Checkpoint relies on comments made by

---

[1] As discussed in the Opening and Responding Briefs, these terms include the preamble language "integrated theft device" and the claim limitations "extending from within said tag body," "maintained by the tag body," anchor is securely maintained within tag body," and "maintained within an aperture of the tag body."

USS during prosecution of the '495 patent. The prosecution history, however, does not support reading narrowing limitations into the claims which are unsupported by the patent itself.

While the prosecution history may be considered during claim construction, it "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of the negotiation, [and] often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.  For example, where discussions of prior art references during prosecution can be interpreted in more than one way, the prosecution history is "not particularly helpful" and insufficient to overcome a construction supported by reading the claims in light of the specification.  *See Netcraft*, 549 F.3d at 1401-02; *see also Honeywell*, 452 F.3d at 1318-19 (rejecting a claim construction argument based on statement during prosecution as "plac[ing] too much weight on that statement, as we find it to be ambiguous and possibly inconsistent with the written description").

While Checkpoint has not stated the legal basis for its argument, it appears to rely on a theory of prosecution disclaimer.  In order to forego subject matter that would otherwise be covered by her claims, however, a patentee must make "***clear and unmistakable*** prosecution arguments limiting the meaning of a claim term in order to overcome a rejection." *Sandisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1286 (Fed. Cir. 2005) (emphasis supplied).  An ambiguous disclaimer does not advance the patent's notice function or justify public reliance, and the court will not use it to limit a claim's ordinary meaning." *Id*. at 1287 (rejecting disclaimer argument based on ambiguous comment during prosecution, because patentee's use of the term "each sector" in response to PTO actually meant "each sector subject to the claimed method").

"There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with the proffered meaning of the disputed term." *01 Communique Lab., Inc. v. Logmein, Inc.*, 687 F.3d 1292, 1297-99 (Fed. Cir. 2012) (rejecting disclaimer argument where distinction over prior art could be interpreted in more than one way and disclaimer was unsupported by the specification). In its Responding Brief, USS explained why its distinction over the Fujiuchi reference during prosecution did not limit its invention to one with a permanent connection between the lanyard and tag body. *See* Def. Resp. Br. at 4. The prosecution history is at the very least subject to more than one reasonable interpretation, an ambiguity that precludes applying the doctrine of prosecution disclaimer.

Moreover, as discussed at the hearing, even if USS's comments were interpreted as limiting they do not apply to all claims of the issued patents. The subsequent prosecution history shows that, at most, only some of the claims were amended to reflect the comments in question. *See* Checkpoint Op. Br. Ex. 23 at 2 (amending claim 1 to add "inaccessibly coupled" limitation after the comments Checkpoint relies upon). At the ***same time***, USS added an independent claim (claim 21) ***without*** such a limitation, followed by a dependent claim (claim 22) explicitly requiring that the lanyard be "permanently and irremovably" coupled to the tag body. *See id.* at 5-6. Those claims 21 and 22 ultimately issued in substantially the same form as claims 15 and 16 of the '495 patent, which plainly show that even if some of the asserted claims require a permanent connection that is certainly not the case for all of them.

D. Conclusion

For the foregoing reasons, as well as those set forth in Defendants' opening and responding claim construction briefs, Defendants respectfully request that the Court enter an order adopting their proposed claim constructions.

Dated: December 14, 2012

                                        Respectfully submitted,

                                        /s/ Larry L. Shatzer
Kip T. Bollin (0065275)
*kip.bollin@thompsonhine.com*
Michael Sherban (0079950)
*mike.sherban@thompsonhine.com*
Holly H. Little (0084054)
*holly.little@thomposonhine.com*
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
Phone: (216) 566-5500
Fax: (216) 566-5800

Douglas Carsten (*admitted pro hac vice*)
*dcarsten@wsgr.com*
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real, Suite 200 San Diego, CA 92130 Phone: (858) 350-2300
Fax: (858) 350-2399

Larry L. Shatzer (*admitted pro hac vice*)
*lshatzer@wsgr.com*
Shaun R. Snader (*admitted pro hac vice*)
*ssnader@wsgr.com*
WILSON SONSINI GOODRICH & ROSATI
1700 K Street, N.W., Fifth Floor
Washington, DC 20006
Phone: (202) 973-8800
Fax: (202) 973-8899

Matthew A. Argenti (*admitted pro hac vice*)
*margenti@wsgr.com*
Albert Shih (*admitted pro hac vice*)
*ashih@wsgr.com*
WILSON SONSINI GOODRICH & ROSATI 650 Page Mill Road Palo Alto, CA 94304 Phone: (650) 493-9300 Fax: (650) 493-6811

Counsel for Defendant and Counterclaim-Plaintiff
**UNIVERSAL SURVEILLANCE CORPORATION**

Counsel for Defendant
**HANGZHOU CENTURY CO., LTD.**

## CERTIFICATE OF SERVICE

A copy of the foregoing was electronically filed with the Court this 14th day of December, 2012, and will be served upon counsel of record via the Court's electronic filing system.

/s/ Matthew A. Argenti
*Counsel for Defendants Universal Surveillance Corporation and Hangzhou Century Co., Ltd.*